# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| EDWARD JEFFERSON | * |
| Plaintiff | * |
| v | *  Civil Action No. JFM-10-2927 |
| OFFICER SHANE WOOTEN, *et al.* | * |
| Defendants | * |

## MEMORANDUM

Pending are plaintiff's motion for injunction (ECF No. 10) and motion for appointment of counsel (ECF No. 12). Also pending are defendants' motions for summary judgment. ECF No. 17 and 24. Plaintiff opposes the motions. ECF No. 21, 28 and 29. Upon review of the papers filed, the court finds a hearing in this matter unnecessary. *See* Local Rule 105.6 (D. Md. 2011).

## Background

Plaintiff alleges he was assaulted by Officer Shane Wooten on January 20, 2009. ECF No. 1 at p. 11. Plaintiff was confined in the segregation unit at Eastern Correctional Institution (ECI) and claims the assault occurred because he had written several complaints about Wooten. The incident occurred when Lt. Ziolkowski sent Wooten, who plaintiff describes as six feet five inches tall and weighing 358 pounds, and Officer Craig Wilker to plaintiff's cell. Wooten told plaintiff Ziolkowski wanted to talk to him about some of the administrative remedy procedure complaints (ARPs) he had filed. Plaintiff states he refused to come out of the cell. Plaintiff claims Wooten then threatened that if plaintiff did not voluntarily leave the cell he would use force to remove him from the cell. Plaintiff's cell door was then opened by Sgt. Benson Jones. It is unclear from the complaint whether plaintiff was handcuffed prior to the door being opened.

Wooten allegedly entered plaintiff's cell swinging his fist, hitting plaintiff in the head and under his right eye. Wilkins followed Wooten and held plaintiff's arms while Wooten delivered punches to plaintiff's body. Officer Craig Wilker grabbed plaintiff's left arm, twisted it behind his back, and pushed him onto the bed. Handcuffs were placed on plaintiff's wrist and a radio call for assistance was made. Ziolkowski, Elliott Stephen, Michael Ennis, and Melvin Harris responded to the radio call, bringing a video camera with them. Plaintiff does not indicate whether any of the incident was videotaped. ECF No. 1 at p. 12.

Plaintiff was escorted to "the medical room" in the segregation housing unit. *Id*. at p. 13. He states nurses Kathy Kilmon[1] and Patricia Sauter came to the medical room to examine him. In Kilmon's written report she noted plaintiff had an abrasion measuring approximately .05 mm in the corner of his right eye with bruising and swelling in that area. A visual acuity test was conducted and plaintiff claimed he could not read the chart with either eye, despite the fact that his left eye was completely unharmed. Plaintiff was given Tylenol for his discomfort and no further medical treatment was provided. Plaintiff alleges that Kilmon asked Officer Elliott if she could give plaintiff ice for the swelling under his eye; and Elliott responded that plaintiff could not have ice where he was going.

Ziolkowski advised plaintiff he was being placed on Staff Alert Level I status because he assaulted Wooten and Elliott. Plaintiff was placed in an isolation cell, handcuffed behind his back, and stripped of all his clothing. Plaintiff was then moved to the cell door backwards, where his handcuffs were removed and the officers left the area. ECF No. 1 at pp. 14—15. Plaintiff was placed on bag lunches for five days and required to wear restraints during recreation and showers during his seven-day assignment to Staff Alert status.

---

[1] Plaintiff misspelled Kilmon's name as Killian. ECF No. 1 at p. 13.

Plaintiff was later criminally prosecuted in the Circuit Court of Somerset County for assault on a correctional officer. He claims Kilmon offered perjured testimony during the trial, stating that plaintiff did not suffer any injuries during the affray with Wooten and Elliott. ECF No. 1 at pp. 23 and 24. Plaintiff claims her perjury resulted in a hung jury. *Id*. After the jury came back deadlocked, plaintiff entered an Alford[2] plea at a subsequent criminal proceeding on April 10, 2010. ECF No. 17 at Ex. C. He was sentenced to serve 10 months. *Id*.

### Injunctive Relief

Plaintiff filed a motion for injunctive relief stating that he attempted to check out a book on federal civil judicial procedure from the library and was denied the opportunity to do so. ECF No. 10. Plaintiff seeks an order requiring the Warden at Western Correctional Institution (WCI) to issue law books for general population inmates' personal use to research their pending claims.

A preliminary injunction is an extraordinary and drastic remedy. *See Munaf v. Geren*, 553 U.S. 674, 689-90 (2008). To obtain a preliminary injunction, a movant must demonstrate: 1) that he is likely to succeed on the merits; 2) that he is likely to suffer irreparable harm in the absence of preliminary relief; 3) that the balance of equities tips in his favor; and 4) that an injunction is in the public interest. *See Winter v. Natural Resources Defense Council, Inc*, 555 U.S. 7, 129 S.Ct. 365, 374 (2008); *The Real Truth About Obama, Inc. v. Federal Election Commission*, 575 F.3d 342, 346 (4th Cir. 2009), vacated on other grounds, _U.S. _, 130 S.Ct. 2371, 176 (2010), reinstated in relevant part on remand, 607 F.3d 355 (4th Cir. 2010) (per curiam).

The motion falls far short of establishing entitlement to an extraordinary remedy. Plaintiff does not allege he was denied use of the book in question, just that he could not take the

---

[2] *See North Carolina v. Alford*, 400 U.S. 25, 37 (1970) (guilty plea allowing defendant to continue to deny guilt but enters the plea to avoid the threat of greater punishment).

3

book out of the library. While plaintiff is correct in his assertion that prisoners have a constitutionally protected right of access to the courts, that right does not include unfettered access to legal materials in the manner preferred by the individual prisoner without regard to the effective management of limited resources available for the prison population as a whole. *See Bounds v. Smith*, 430 U. S. 817, 821 (1977). Moreover, plaintiff can not establish that the denial of his request to check the book out caused him actual harm. "The requirement that an inmate alleging a violation of *Bounds* must show actual injury derives ultimately from the doctrine of standing, a constitutional principle that prevents courts of law from undertaking tasks assigned to the political branches." *Lewis v. Casey*, 518 U.S. 343, 349 (1996). There is no likelihood of success with regard to the claim raised in plaintiff's motion for injunction. The motion shall be denied.

### Appointment of Counsel

Plaintiff's motion for appointment of counsel cites his inability to access legal materials, his incarceration, and his lack of resources to hire an attorney. ECF No. 12. A federal district court judge's power to appoint counsel under 28 U.S.C. § 1915(e)(1)[3] is a discretionary one, and may be considered where an indigent claimant presents exceptional circumstances. *See Cook v. Bounds*, 518 F.2d 779, 780 (4th Cir. 1975); *see also Branch v. Cole*, 686 F.2d 264, 266 (5th Cir. 1982). The question of whether such circumstances exist in a particular case hinges on the characteristics of the claim and the litigant. *See Whisenant v. Yuam*, 739 F.2d 160, 163 (4th Cir. 1984), abrogated on other grounds by *Mallard v. U.S. District Court*, 490 U.S. 296, 298 (1989). Where a colorable claim exists but the litigant has no capacity to present it, counsel should be appointed. *Id*.

---

[3] Under § 1915(e)(1), a court of the United States may request an attorney to represent any person unable to afford counsel.

The instant case concerns allegations of excessive force, perjury, and denial of medical care. Upon careful consideration of the motions and previous filings by Plaintiff, the court finds that he has demonstrated the wherewithal to either articulate the legal and factual basis of his claims himself or secure meaningful assistance in doing so. The issues pending before the court are not unduly complicated and no hearing is necessary to the disposition of this case. Therefore, there are no exceptional circumstances that would warrant the appointment of an attorney to represent Plaintiff under §1915(e)(1).

## Standard of Review

Rule 56(a) of the Federal Rules of Civil Procedure provides that the "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion. "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court must "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in her favor without weighing the evidence or assessing the witnesses' credibility," *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002), but

the court also must abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotations omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

## Analysis

### Medical Claim

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). "Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment." *De'Lonta v. Angelone*, 330 F. 3d 630, 633 (4th Cir. 2003) *citing Wilson v. Seiter*, 501 U.S. 294, 297 (1991). In order to state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that the actions of the defendants or their failure to act amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff were aware of the need for medical attention but failed to either provide it or ensure the needed care was available. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Objectively, the medical condition at issue must be serious. *See Hudson v. McMillian,* 503 U.S. 1, 9 (1992) (there is no expectation that prisoners will be provided with unqualified access to health care). Proof of an objectively serious medical condition, however, does not end the inquiry.

The subjective component requires "subjective recklessness" in the face of the serious medical condition. *See Farmer*, 511 U.S. at 839– 40. "True subjective recklessness requires

knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F. 3d 336, 340 n. 2 (4th Cir. 1997). "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Virgiinia Beach Correctional Center*, 58 F. 3d 101, 105 (4th Cir. 1995) *quoting Farmer* 511 U.S. at 844. If the requisite subjective knowledge is established, an official may avoid liability "if [he] responded reasonably to the risk, even if the harm was not ultimately averted. *See Farmer*, 511 U.S. at 844. Reasonableness of the actions taken must be judged in light of the risk the defendant actually knew at the time. *Brown v. Harris*, 240 F. 3d 383, 390 (4th Cir. 2000); *citing Liebe v. Norton*, 157 F. 3d 574, 577 (8th Cir. 1998) (focus must be on precautions actually taken in light of suicide risk, not those that could have been taken).

The facts regarding the extent of plaintiff's injuries are undisputed. Plaintiff acknowledges Kilmon's Matter of Record (MOR) as accurate. ECF No. 1 and There was no serious injury. An abrasion measuring less than one millimeter, bruising and swelling are not serious in nature. There is no evidence that plaintiff's injuries were life threatening, painful, or otherwise serious. The assertion that he could not read the eye chart is simply not supported by the objective description of the minimal injuries sustained. Defendant Kilmon provided the appropriate level of care required by the injuries sustained. Plaintiff's claim that she should have done more to insure he was given ice for his swollen eye is merely a disagreement with the care provided. *See Wright v. Collins*, 766 F.2d 841, 849(4th Cir.1985) (disagreement with medical opinion is not deliberate indifference). In addition, he does not claim that the failure to provide him with ice worsened the injury to his eye.

### Perjured testimony claim

Plaintiff's claim against Kilmon regarding her testimony at the criminal trial is not cognizable. It is undisputed that Kilmon initially testified that plaintiff sustained no injuries and that her testimony was impeached through the use of the MOR she wrote at the time of the incident. ECF No. 1 and 17. Kilmon, however, states that she initially did not recall plaintiff's injuries because they were so minor. Her misstatement regarding whether he sustained injuries was inadvertent. In any event, her testimony on direct that plaintiff sustained no injury did not generate a cause of action against her. First, there was no harm to plaintiff accruing from the direct testimony, especially in light of the effective cross-examination by defense counsel. Second, plaintiff's *Alford* plea obviated the necessity for any further testimony regarding the circumstances of the assault. Kilmon is entitled to summary judgment in her favor on all claims raised against her.

### Excessive Force Claim

Whether force used by prison officials was excessive is determined by inquiring if "force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U. S. 1, 6-7 (1992). This court must look at the need for application of force; the relationship between that need and the amount of force applied; the extent of the injury inflicted; the extent of the threat to the safety of staff and inmates as reasonably perceived by prison officials; and any efforts made to temper the severity of the response. *Whitley v. Albers*, 475 U. S. 312, 321 (1986). The absence of significant injury alone is not dispositive of a claim of excessive force. *See Wilkens v. Gaddy*, __ U.S. __, 130 S. Ct. 1175 (2010). The extent of injury incurred is one factor indicative of whether the force used was

necessary in a particular situation, but if force is applied maliciously and sadistically liability is not avoided simply because the prisoner had the good fortune to escape serious harm. *Id.*

Defendants claim they handcuffed plaintiff prior to entering his cell, but he escaped the handcuffs and immediately attacked Wooten as he entered his cell, stiking him in the face with his fist. ECF No. 24 at Ex. 2 and 3. To quell plaintiff's assaultive behavior, Wooten wrapped his arms around plaintiff's torso in an attempt to control his arms. Wilkins also attempted to control plaintiff's arms. During the struggle, the three men fell to the bed, with plaintiff landing face down. Plaintiff was then re-handcuffed and escorted out of the cell. Defendants assert that the force used against plaintiff was that which was necessary to restore discipline, and nothing more. This version of events differs wildly from plaintiff's version of events in which Wooten, a man twice the size of plaintiff,[4] came charging into the cell swinging his fists, striking plaintiff repeatedly in the head, face and body. ECF No. 1 at p. 12.

"When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (videotape utterly discredited plaintiff's version of the facts). The undisputed facts regarding the extent of plaintiff's injury discredits plaintiff's version of events. Plaintiff's version of the facts is unsupported by the objective evidence and defendants are entitled to summary judgment on the excessive force claim.

## Conditions Claim

Conditions which "deprive inmates of the minimal civilized measure of life's necessities" may amount to cruel and unusual punishment. *Rhodes v. Chapman*, 452 U. S. 337, 347 (1981).

---

[4] *See* ECF No. 24 at Ex. 5, p. 3, noting plaintiff's height (5'2") and weight (130 lbs) and ECF No 1 at p. 11, noting Wooten's height (6'5") and weight (358 lbs).

However, conditions which are merely restrictive or even harsh, "are part of the penalty that criminal offenders pay for their offenses against society." *Id*.

> In order to establish the imposition of cruel and unusual punishment, a prisoner must prove two elements - that 'the deprivation of [a] basic human need was *objectively* sufficiently serious,' and that '*subjectively* the officials acted with a sufficiently culpable state of mind.'

*Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995) (emphasis in original; citation omitted).

"[T]o withstand summary judgment on an Eighth Amendment challenge to prison conditions a plaintiff must produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions." *Strickler v. Waters*, 989 F.2d 1375, 1381 (4th Cir.), *cert. denied*, 114 S. Ct. 393 (1993).

Plaintiff claims he was placed on Staff Alert Status, Level I, which included confinement to a cell which was poorly heated and had a window that was blocked open all night. ECF No. 28 at p. 7. He claims the cell was filthy with no furnishings other than a toilet and a sink. *Id*. For meals plaintiff was provided bag lunches for a period of seven days. Each time a meal was delivered plaintiff was required to move to the back of the cell, face the back wall on his hands and knees, and wait for the officer to drop the bag lunch through the feed up slot on the door. The meals consisted of three slices of bread, a piece of fruit, and sliced cheese, lunch meat, hard-boiled eggs, or peanut butter. *Id*. at pp. 7 – 8. After seven days on Level I, plaintiff was returned to his cell but was still required to take recreation alone and to wear restraints during recreation and showers. *Id*. at p. 8.

Defendants state that Staff Alert Status is a "temporary custody status for the retention of assaultive or aggressive inmates on disciplinary or administrative segregation, who have exhibited behavior that is a threat to the security and order of the institution or who threatens

harm to themselves, others or property." ECF No. 24 at Ex. 6. Plaintiff was placed on this status on January 20, 2009. On Level I the inmate is provided with a paper gown, a pair of booties, and a tuff sheet. *Id*. The following day plaintiff was put on Level II status meaning he was provided with underwear, a jumpsuit, shower shoes, and one religious item. Defendants admit that plaintiff was provided with bag meals from January 20 to 25, 2009.[5] *Id*. at Ex. 10.

There is no allegation, nor any evidence supporting, that plaintiff suffered any injury as a result of the conditions imposed when he was on Staff Alert Status. At most plaintiff has alleged he was subjected to harsh conditions for a short period of time which did not cause an injury. Defendants are entitled to summary judgment on this claim.

### Claims against unserved defendants

Service was never accepted on behalf of Craig Wilkins, Detective Danna, Sergeant William Justice, Officer Travis, Kristy Kickman, and Karen Dean. ECF No. 11. The claims against Danna and Justice appear to arise out of their failure to pursue criminal charges against Wooten as requested by plaintiff. ECF No. 28 at p. 10. As an alleged crime victim, plaintiff has no standing to force a criminal prosecution against another. *See Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) (citizens lack standing to contest the policies of the prosecuting authority when he himself is neither prosecuted or threatened with prosecution); *Sattler v. Johnson*, 857 F.2d 224, 227 (4th Cir.1988) (no right to force state to prosecute others under equal protection clause).

With respect to the remaining defendants, no further efforts to serve them will take place in light of the record evidence entitling defendants to summary judgment. Thus, the complaint with respect to the unserved defendants will be dismissed.

---

[5] Defendants do not address plaintiff's claim that the window in the cell was blocked open because it is raised for the first time in plaintiff's response in opposition.

11

Accordingly, for the reasons stated herein, defendants' motions for summary judgment will be ganted and judgment will be entered in their favor by separate order which follows.


____August 9, 2011____         ____/s/_____
Date         J. Frederick Motz
       United States District Judge